10435

HALLMAN v. LIPSCOMB.

(103 S. E. 513.)

1. BROKERS—COMMISSION FORFEITED BY BECOMING PURCHASER.—A broker abandons his position as agent to sell on commission by taking a contract for the sale of the land directly to himself since the positions of agent to sell and of purchaser are conflicting.

2. VENDOR AND PURCHASER—PURCHASER CANNOT AVOID CONTRACT FOR FRAUD WITHOUT SHOWING DISCOVERY AFTER CONTRACT.—Purchaser cannot avoid his contract on the ground of fraudulent misstatement of the owner that she had a better offer for the land, without showing that knowledge of the falsity of such statement came to him after the contract was executed.

3. BROKERS—CANNOT RECOVER COMMISSION AFTER TESTIFYING TO PROMISE TO WAIVE.—A broker cannot recover his commission because a contract for sale to himself was induced by the owner's fraud where he testified at the trial he agreed to knock off his commission to induce the owner to sign the contract.

Before GARY, J., Cherokee, Fall term, 1919.    Reversed.

Action by A. L. Hallman against Emma G. Lipscomb for commissions as agent on a sale of real estate. From verdict for plaintiff, defendant appeals.

*Messrs. Butler & Hall,* for appellant, cite: *Testimony as to oral contract which had been superseded by written contract was admitted in error and should have been stricken out:* 46 S. C. 411; 47 S. C. 176; 77 S. C. 191; 83 S. C. 204; 90 S. C. 541; 108 S. C. 47; 109 S. C. 29; 111 S. C. 287; 27 S. C. 376; 99 S. C. 108; 17 Cyc. 632. *Jury should have been instructed as to the elements of fraud:* 20 Cyc. 127, *et seq.;* 62 S. C. 42.

*Messrs. Dobson & Vassy,* for respondent. Oral argument.

June 28, 1920.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The plaintiff is a real estate agent. The defendant was the owner of a tract of land in Cherokee county, near Gaffney. The plaintiff asked the defendant to allow him to sell her plantation for her. The defendant was not anxious to sell. There were several interviews between the parties in reference to the sale. About the conversations there is much conflict of evidence. The plaintiff claims that the defendant agreed to pay commissions of 5 per cent. on the selling price. The defendant claims that the price of $12,000, for which she sold the place, was to be net to her; that she finally consented to the sale at that price. The last of these interviews took place on the morning of the 11th of January, 1918. Later in the day of the 11th of January, 1918, the defendant agreed to sell for $12,000. The plaintiff then had an agreement prepared and signed by the defendant, as follows:

"Exhibit A.    State of South Carolina, County of Chero-
kee.    Received of A. L. Hallman the sum of $500 as part
payment of the purchase price of $12,000 of my farm, in
Cherokee county, containing 104 acres, more or less,
bounded on the north by lands of J. C. Pettit, on the east by
lands of J. C. Pettit and June Humphreys, on the south by
lands of Anthony Hopper, and on the west by lands of R. L.
Morgan; and upon the payment of the balance of said sum
of $12,000 February 1, 1918, I do hereby agree to execute
and deliver to the said A. L. Hallman a deed of conveyance
in fee simple of the above described premises free of incum-
brances.    It is understood that the present tenant is to
farm said land this year.

"Witness my hand and seal this January 11, 1918.    Mrs.
Emma G. Lipscomb.    Signed, sealed and delivered in the
presence of J. L. Moorehead."

In pursuance of this contract, the plaintiff demanded and
defendant executed the conveyance of the land to those to
whom the plaintiff assigned the contract.    After the sale the
plaintiff demanded commissions and the defendant refused
to pay them.    The plaintiff brought suit on his view of the
verbal contract.    The plaintiff admitted the written con-
tract.    The defendant objected to all testimony in reference
to any evidence of the parol contracts.    The objections were
overruled.    At the conclusion of the testimony for the plain-
tiff the defendant moved for a new trial and directed verdict,
which were refused.    At the conclusion of all the testimony
for the plaintiff the defendant renewed her motion for a
directed verdict.    This was also refused.

2. The plaintiff abandoned the position of agent for the
defendant, even if he had ever occupied such a position,
and took the contract directly to himself.    The posi-
tions of agent to sell and purchase are conflicting,
and the plaintiff could not occupy both positions.
The plaintiff procured the conveyance under his contract as
purchaser.

3. The plaintiff asked the presiding Judge to charge that if there was fraud it would vitiate the written contract. The testimony upon which this request to charge was based was that on the morning of the 11th the defendant told him that she had had an offer of $12,600 for the land and he found that that statement was not true. The record does not show that the plaintiff discovered the falsity of the statement, if it was false, after the contract was made, and it is now too late for him to repudiate the contract. Even if the defendant made the statement and it was false, it cannot affect this case. The record shows that when the plaintiff was on the stand the following occurred:

"Q. State what it was that induced you to tell Mrs. Lipscomb that if she would let your people have it you would knock off your commission. A. It was a matter of business; I was going to take the medicine and let my people have the land. I had done tied up with them, and went up and subdivided it for them. Q. State whether or not anything Mrs. Lipscomb said induced you to tell her that you would knock off your commission. A. I seen she wasn't going to sign up no other way."

In other words, the plaintiff says that he induced the defendant to sign the contract by his promise to surrender his commissions. It is not necessary to consider the exceptions in detail.

The judgment is reversed.