0596

Charles WINBURN, Appellant, v. INSURANCE COMPANY OF NORTH AMERICA and G. Pinckney Darby, Respondents.

(339 S. E. (2d) 142)

Court of Appeals

*Patrick F. Stringer* of *Stringer & Stringer*, Charleston, *for appellant.*

*Wade H. Logan, III* and *Susan Taylor Wall* of *Holmes, Thomson, Logan & Cantrell,* Charleston, *for respondent, Insurance Co. of North America.*

*G. Pinckney Darby, pro se.*

Heard Oct. 24, 1985.

Decided Dec. 30, 1985.

GOOLSBY, Judge:

This is an action for fraud and negligence. The trial court granted the motion of the respondent Insurance Company of North America (INA) for an involuntary nonsuit and the motion of the respondent G. Pinckney Darby for a directed verdict. Charles Winburn appeals. The questions on appeal concern the sufficiency of the evidence as to Winburn's causes of action for fraud and for negligence and the admission and exclusion of certain evidence. We affirm in part, reverse in part, and remand for new trial.

## I. Sufficiency of Evidence

We deal first with the issue of whether the trial court correctly granted the respondents' respective motions for involuntary nonsuit and directed verdict as to Winburn's causes of action for fraud and for negligence.

In determining this question, we must review the evidence and all inferences reasonably deducible therefrom in the light most favorable to Winburn, the nonmoving party. *Woodward v. Todd,* 270 S. C. 82, 240 S. E. (2d) 641 (1978); *Vacation Time of Hilton Head Island, Inc. v. Lighthouse Realty, Inc.,* 286 S. C. 261, 332 S. E. (2d) 781 (Ct. App. 1985). Our task, then, is to decide whether there was sufficient evidence to warrant submitting the case to the jury under either theory.

Winburn, a resident of Aiken, South Carolina, owned a twenty-six foot diesel trawler on which Coastal Production Credit Association held a lien. The trawler sank on March 18, 1980, while tied up at a dock on the Folly River near Folly Beach, South Carolina. The next day, Charles Peyton, in whose care Winburn had entrusted the boat, notified Winburn's wife of its sinking. Peyton also notified INA, the

insurance company from whom Winburn had purchased marine insurance.

INA immediately contacted Darby, a marine surveyor and adjuster. It asked him to investigate the boat's sinking, "assess the situation," and report his findings to INA.

Darby inspected the damage and later spoke to Winburn and Winburn's wife by telephone. Darby, whom the Winburns understood was an adjuster for INA, told Winburn the trawler had been raised.

Winburn asked Darby who he could use to repair the trawler. Darby mentioned there were two marine mechanics in the Folly Road area, Port City Marine and Charles Berger. Winburn inquired whether Berger was a good mechanic. Darby implied Berger was a competent mechanic by telling Winburn he had used Berger in the past to repair his own boat and had faith in him. Winburn asked Darby to contact Berger for him.

After talking with Winburn, Darby called Berger and requested him to call Winburn. Berger did so and Winburn authorized him to repair his boat.

Shortly thereafter, Darby filed with INA an initial report of his findings. He estimated repair costs would not exceed $7,000.

Berger began to work on the trawler. He subsequently submitted to Darby an itemized statement for the repair work he had completed on the boat and for the repair work remaining to be done. Invoices attached to the statement totaled $6,337.24. Darby also received from Doug Wakefield a statement in the amount of $200 for raising the sunken craft. Darby forwarded both statements to INA and recommended they be paid, less the amount of the deductible.

Within a matter of days, INA issued a check in the amount of $5,037.24 made payable to Winburn and to Coastal Production. Winburn, however, refused to endorse the check. He was dissatisfied with Berger's work and concerned about the boat not being operational.

A meeting at Coastal Production's office followed. In attendance were Darby, Winburn, Berger and his wife, and Thomas M. Ervin, who represented Coastal Production. Berger's wife complained to Winburn about Berger not being paid for his work. Berger stated he could not complete

the repairs unless he was paid everything he was to receive for the job.

Winburn did not want to endorse the check as long as the boat was not running. Darby told Winburn, however, that Berger was a "good mechanic" and assured Winburn that if Winburn would endorse the check he would "see to it that [Berger] fixed the boat."

Ervin endorsed the check for Coastal Production and gave it to Winburn. He refused once again to sign the check.

Sometime after the meeting, Winburn ran into Berger near the dock. Berger looked to Winburn "like he had lost his last friend." Because he felt sorry for Berger, Winburn endorsed the check and gave it to him. Winburn later testified he would not have endorsed the check had it not been for Darby's prior assurances.

Berger performed additional repair work on the trawler and INA sent Winburn a check in the amount of $769.60 to pay for it. Winburn, however, refused to endorse the check.

Berger never completed repairs on the trawler. Winburn talked to Darby several times about the matter and also twice contacted Eva Poole of INA. At no time did Darby either go to see about the boat or attempt to determine whether Berger had completed the itemized repairs. INA also sent no one either to look at the trawler or to inquire of Berger about the repairs he was supposed to have made. As late as August 5, 1980, however, INA and Darby knew Winburn's boat was not operating.

Winburn hired another mechanic the following summer.

Winburn later brought the instant action alleging three causes of action. At trial, he elected to proceed against Darby on the basis of fraud and against INA and Darby on the basis of negligence.

## A. Fraud

Underlying Winburn's fraud action are the claims that Darby made fraudulent representations regarding Berger's competency as a marine mechanic and that Darby induced Winburn to endorse the insurance check by fraudulently representing he would guarantee Berger would complete the repairs on the trawler.

To establish actionable fraud, there first must be a false representation. *Woodward v. Todd, supra; Emerson v. Powell*, 283 S. C. 293, 321 S. E. (2d) 629

(Ct. App. 1984). The false representation, however, must be one of fact as distinguished from the mere expression of an opinion. *Gilbert v. Mid-South Machinery Co., Inc.,* 267 S. C. 211, 227 S. E. (2d) 189 (1976); 37 C. J. S. *Fraud* § 10 at 226-27 (1943). As a general rule, fraud cannot be predicated on a statement that constitutes an expression of an intention. 37 C. J. S. *Fraud* § 11 at 231 (1943); *see Greer Bank & Trust Co. v. Waldrop,* 155 S. C. 47, 151 S. E. 920 (1930).

Further, an actionable representation cannot consist of a mere broken promise, even if a party acts in reliance on the promise. 37 C. J. S. *Fraud* § 11 at 231-33 (1943); *see Page v. Pilot Life Insurance Co.,* 192 S. C. 59, 5 S. E. (2d) 454 (1939); *Crozier v. Provident Life & Accident Insurance Co.,* 53 Ga. App. 572, 186 S. E. 719 (1936). An action in fraud, however, can be based on an unfulfilled promise to perform in the future made with a present undisclosed intention not to perform and for the purpose of inducing one to sign a paper or do some other act. *Jones v. Cooper,* 234 S. C. 477, 109 S. E. (2d) 5 (1959).

The record is devoid of any evidence Darby's representations were false when Darby made them. Evidence that Berger did not subsequently repair Winburn's boat is insufficient, without more, to prove Berger was not a good marine mechanic. The truth or falsity of a representation must be determined as of the time it was made or acted on and not at some later date. *Austin v. Tire Treads, Inc.,* 21 N. C. App. 737, 205 S. E. (2d) 615 (1974); 37 C. J. S. *Fraud* § 17c at 251 (1943). Inferences of fact, like fullbacks on football teams, do not ordinarily run backward. *Childress v. Nordman,* 238 N. C. 708, 78 S. E. (2d) 757 (1953).

In any case, Darby's representations that Berger was a good mechanic were nothing more than mere expressions of an opinion. *See* 37 Am. Jur. (2d) *Fraud and Deceit* § 46 at 73 (1968); *cf. Springer v. Bank of Douglas,* 82 Ariz. 329, 313 P. (2d) 399 (1957) (a statement by bank official that a person was a good businessman and that he would recommend going into business with him held to be a mere expression of an opinion).

Darby's assurance to Winburn that he would make certain Berger repaired the trawler if Winburn would sign the en-

dorsement constituted at most a mere expression of intention, absent some evidence that Darby, at the time he gave his assurance to Winburn, entertained no intention of keeping his promise. The record, however, contains no evidence of this kind.

While it is true Darby failed to keep his promise, evidence of mere nonperformance of a promise is not sufficient to establish either fraud or a lack of intent to perform. 37 Am. Jur. (2d) *Fraud and Deceit* § 60 at 92-93 (1968); 37 C. J. S. *Fraud* § 116 at 440-41 (1943); *see Jones v. Cooper, supra.* Nonobservance of a promise may support an inference of a lack of intent to perform only when it is coupled with other evidence. 37 C. J. S. *Fraud* § 116 at 441 (1943). Here, there is no other evidence.

The trial court, therefore, properly directed a verdict in Darby's favor on the cause of action alleging fraud.

## B. Negligence

Winburn's negligence action involves allegations that INA and its alleged adjuster Darby negligently made certain misrepresentations to him, negligently adjusted his claim, acted in bad faith and unreasonably in processing his claim, and negligently failed to ensure repairs were made on his boat after affirmatively assuming the duty to see that they were performed.

### 1. Negligent Misrepresentation

Winburn argues the evidence supports the conclusion the defendants, through Darby, negligently misrepresented Berger to be a competent marine mechanic and negligently misrepresented INA and Darby would make sure that Berger made the necessary repairs on Winburn's boat.

The recovery of damages may be predicated upon a negligently-made false statement where a party suffers either injury or loss as a consequence of relying upon the misrepresentation. 65 C. J. S. *Negligence* § 20 at 642 (1966); *see* 37 Am. Jur. (2d) *Fraud and Deceit* § 209 at 276-77 (1968); Prosser and Keaton, *The Law of Torts* § 107 at 745-46 (5th ed. 1984). A duty to exercise reasonable care in giving information exists when the defendant has a pecuniary interest in the transaction. RESTATEMENT (SECOND) OF

TORTS § 552 (1977); *cf. Gordon-Gallup Realtors, Inc. v. Cincinnati Insurance Co.*, 274 S. C. 468, 265 S. E. (2d) 38 (1980) (insurer had duty to defend action where complaint created reasonable possibility of recovery under theory of negligent misrepresentation); *Lawlor v. Scheper*, 232 S. C. 94, 101 S. E. (2d) 269 (1957) (nonsuit and directed verdict motions properly denied where real estate agents misrepresented to purchaser the amount owing on mortgages covering property even though agents may not have known the representation was false). "The fact that the information is given in the course of the defendant's business, profession or employment is a sufficient indication that he has a pecuniary interest in it, even though he receives no consideration for it at the time." RESTATEMENT (SECOND) OF TORTS § 552, Comment d, at 129-30 (1977); *see* Prosser and Keaton, *The Law of Torts* § 107 at 747 (5th ed. 1984).

We are satisfied that both INA and Darby had a ██ ██pecuniary interest in their relationship with Winburn and, therefore, owed a duty to Winburn to use due care in giving him information. We are also satisfied, however, that neither INA nor Darby breached this duty.

Regarding the statements Darby made to Winburn concerning Berger's competency as a marine mechanic, we note once more the record contains no evidence these statements were false at the times Darby made them. Again, evidence that Berger failed to repair Winburn's trawler, standing alone, is insufficient to prove Berger was an incompetent marine mechanic.

Regarding the representation made by Darby to Winburn that Darby would make sure Berger repaired Winburn's boat if Winburn would endorse INA's check and pay Berger, there is no evidence Darby negligently made a false statement in telling Winburn this. The fact that neither INA nor Darby honored Darby's commitment does not constitute proof of negligent misrepresentation. Evidence of a mere broken promise is not sufficient to prove negligent misrepresentation any more than it is sufficient to prove fraudulent misrepresentation. *Cf. Shropshire v. Jones*, 277 S. C. 468, 289 S. E. (2d) 410 (1982) (promise given by hospital administrator to hospital employee that he would assist employee in connection with the employee's

worker's compensation claim and the administrator negligently failed to keep his promise resulting in denial of employee's claim held to afford no basis for a cause of action).

### 2. Negligent Adjustment

Winburn also argues the evidence supports the conclusion the defendants negligently adjusted his claim in that INA and Darby failed to itemize the repairs needed by the trawler as a result of the sinking. This contention has no merit.

Three elements are essential to a cause of action based on negligence: (1) the existence of a duty on the part of the defendant to protect the plaintiff; (2) the failure of the defendant to discharge the duty; and (3) an injury to the plaintiff resulting from the defendant's failure to perform. *Crowley v. Spivey*, 285 S. C. 397, 329 S. E. (2d) 774 (Ct. App. 1985). The absence of any one of these elements renders the evidence insufficient. 65 C. J. S. *Negligence* § 2(1) at 464 (1966).

At trial, Winburn offered no evidence prescribing the manner in which INA and Darby were to adjust his claim. Absent some evidence INA and Darby had a duty to itemize the repairs required by his boat, no basis for liability exists.

### 3. Bad Faith and Unreasonable Failure to Investigate and Settle Claim

Winburn further maintains INA and Darby in bad faith and unreasonably failed to investigate and settle his claim, particularly after he notified them Berger had not completed the repairs on his boat. He relies on *Nichols v. State Farm Mutual Automobile Insurance Co.*, 279 S. C. 336, 306 S. E. (2d) 616 (1983).

In *Nichols*, the Supreme Court held an insured can recover consequential damages in a tort action if the "insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract." 279 S. C. at 340, 306 S. E. (2d) at 619. *See also, Carter v. American Mutual Fire Insurance Co.*, 279 S. C. 367, 307 S. E. (2d) 225 (1983); *Wilson v. Insurance Company of*

*North America*, 281 S. C. 76, 313 S. E. (2d) 640 (Ct. App. 1984).

Here, the evidence is insufficient to show either INA or Darby acted either in bad faith or unreasonably in processing Winburn's claim. To the contrary, the evidence shows INA retained Darby, a marine surveyor, to assess the damage to Winburn's boat and on two occasions, after receiving a recommendation from Darby, forwarded checks to Winburn in payment of repairs either made or to be made upon his trawler. There is no evidence Winburn submitted to either Darby or INA any claim for additional repairs and no evidence either Darby refused to pass an additional claim on to INA or INA refused to pay an additional claim. In fact, Winburn expressed the belief at trial that the total amount paid him by INA should have been sufficient for a competent marine mechanic to have repaired his boat.

We recognize there is evidence in the record that neither INA nor Darby made any inspection of Winburn's trawler after he notified them about Berger's failure to fix it; but this fact, standing alone, is not enough to establish liability under *Nichols*.

### 4. Failure to Ensure Repairs
### Were Made

Finally, Winburn maintains INA and Darby negligently failed to ensure that Berger completed the necessary repairs on the trawler. He apparently grounds INA's and Darby's duty to make sure the necessary repairs were made on the legal proposition that one who assumes to act, even though under no obligation to do so, may become subject to the duty to act with due care. *See Roundtree Villas Association, Inc. v. 4701 Kings Corp.*, 282 S. C. 415, 321 S. E. (2d) 46 (1984); *Crowley v. Spivey, supra; Carolina Bank and Trust Co. v. St. Paul Fire and Marine Co.*, 279 S. C. 576, 310 S. E. (2d) 163 (Ct. App. 1983); RESTATEMENT [SECOND] OF TORTS § 323(b) (1965).[1]

---

[1] "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's ... things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

\* \* \*

(b) the harm is suffered because of the other's reliance upon the undertaking."

In support of his contention that INA and Darby negligently breached this duty, Winburn offered evidence that, after he endorsed the first check, INA and Darby entered upon the performance of their new undertaking by having Berger replace the trawler's ring gear and by forwarding him a check to pay the cost of repairing this "additional damage." Winburn testified he later contacted both INA and Darby and informed them "the boat's not fixed" and "the boat's not running" because "the mechanic hasn't done his job." When no one came to inspect the boat in response to his complaints, he employed another mechanic "to look" at it. The motor to the trawler, however, was never repaired and thus remained inoperable.

Clearly, a jury question exists concerning whether INA and Darby negligently failed to perform the duty they agreed to undertake, *i.e.*, to make certain Berger repaired Winburn's boat if Winburn endorsed INA's check. The trial court, therefore, erred in granting INA's motion for involuntary nonsuit and Darby's motion for directed verdict on this issue and we remand for a new trial on it alone.

INA argues, however, that the evidence is insufficient to create a jury issue concerning whether Darby was its agent when he assured Winburn the repair work on the boat would be completed if Winburn endorsed INA's check and whether Darby had the authority to make the commitment. This argument is manifestly without merit. *See* Section 14-8-250, Code of Laws of South Carolina, 1976, as amended. (This court "need not address a point which is manifestly without merit.")

When consideration is given to the circumstances, the apparent relationship of the parties, and the conduct of the parties with reference to the subject matter, an inference plainly may be drawn from the evidence that Darby was INA's agent at the time and that he possessed the authority to commit INA to the new duty. *See Drayton v. Industrial Life & Health Insurance Co.*, 205 S. C. 98, 31 S. E. (2d) 148 (1944); *Williams v. Commercial Casualty Insurance Co.*, 159 S. C. 301, 156 S. E. 871 (1931).

## II. Evidentiary Matters

Winburn complains about a number of the trial judge's evidentiary rulings. These complaints are also manifestly without merit. *See* Section 14-8-250, Code of Laws of South Carolina, 1976, as amended.

Generally, the admission and exclusion of evidence is left to the trial judge's discretion. The exercise of his discretion will not be reviewed by the Court of Appeals absent a clear showing the trial judge abused his discretion, committed legal error in its exercise, and prejudiced the appellant's rights. *Cudd v. John Hancock Mutual Life Insurance Co.*, 279 S. C. 623, 310 S. E. (2d) 830 (Ct. App. 1983). Winburn made no such showing here.

Affirmed in part, reversed in part, and remanded.

SANDERS, C. J., and CURETON, J., concur.