### 23206

A. Dale GILLILAND, Respondent v. ELMWOOD PROPERTIES, a South Carolina general partnership, Robert A. Causey, Woodie R. Smith, Charles M. Mulherin and Allen P. Howell, individually and as partners of Elmwood Properties, a South Carolina general partnership, Petitioners.

(391 S.E. (2d) 577)

Supreme Court

*G. Trenholm Walker* of *Wise & Cole, P.A.*, Charleston, *for petitioners.*

*Judson F. Ayers*, of *Ayers & Anderson*, Greenwood, *for respondent.*

Heard March 20, 1990.

Decided April 30, 1990.

TOAL, Justice:

We granted *certiorari* to review the Court of Appeals' opinion in *Gilliland v. Elmwood Properties*, 297 S.C. 197, 375 S.E. (2d) 342 (1988). This case involves three issues: (I) whether summary judgment should have been granted the plaintiff on his breach of contract action on the ground that a certain contractual clause was unambiguous; (II) whether summary judgment should have been granted the plaintiff on the ground that the defendants failed to allege and/or provide evidence of a recognizable counterclaim in tort; and (III) whether the parol evidence rule operates to defeat the defendants' counterclaim for breach of contract. The Court of Appeals affirmed the trial court's granting of partial summary judgment in favor of the plaintiff on all of these issues.[1] We reverse on issues (I) and (II) and affirm on issue (III).

## FACTS

A. Dale Gilliland, an architect, brought a breach of contract action demanding payment for services rendered against the

---

[1] Summary judgment was denied as to that part of Gilliland's motion which dealt with the individual liability of the defendant partners.

petitioners, Elmwood Properties, Robert Causey, Woodie Smith, Charles Mulherin, and Allen Howell (collectively Elmwood). Elmwood answered, denying payment was due, and counterclaimed. As one of its defenses, Elmwood asserted a failure of a condition precedent, *viz*, that because financing was impossible to obtain on the construction project, no payments were due Gilliland. Elmwood's counterclaims included assertions of negligence and breach of contract.

Specifically, Elmwood pled that Gilliland breached the contract by failing to design a project which would qualify for tax exempt bond funding; failing to observe the project's budgetary constraints; failing to design a project feasible for conventional financing; and failing to obtain necessary municipal and governmental agency approvals for construction of the project. Additionally, Elmwood alleged specifically that Gilliland was negligent in representing that the project he designed would qualify for tax exempt bond funding and in thereby inducing Elmwood to contract with him; designing a project that failed to qualify for such funding; grossly underestimating the probable construction costs for the project; and in other particulars essentially identical to those claimed as breaches of contract.

## LAW/ANALYSIS

### I. *Plaintiff's Breach of Contract Claim*

Gilliland provided certain architectural services for Elmwood and asserts that he is contractually due payment for them. The trial court and Court of Appeals held that the contract between the parties was unambiguous and lacked a condition precedent to payment, and that therefore Elmwood was not excused from payment. Payment to the architect is governed by a handwritten provision in the parties' contract. This provision reads:

> Payment to the architect shall be made by the owner at loan closing (project loan closing) upon invoice by the architect. If project is approved and not closed by the owner after the completion of architectural and engineering contract documents (plans and specifications) moneys due the architect will be payable by the project owners

individually or collectively within 30 days after invoice by the architect, as each partner's interest appear [sic] in their agreement.

Gilliland argues that this provision means that, once the owners (Elmwood) approved the "project" (defined by Gilliland as the plans and specifications), moneys were due. The remainder of the provision means, according to Gilliland, that if a loan were closed for the project, payment would be due him upon the owner's receipt of his invoice. Alternatively, if a loan were not closed, the individual partners would pay him for his services within 30 days after their receipt of his invoice.

Elmwood contends that the clause is a condition precedent to payment. It argues that, if a loan were approved and closed, payment would be made upon invoice. Elmwood asserts that if a loan were approved for the project, but the owners decided not to close on the loan, the clause provides for payment to Gilliland 30 days after invoice. If no loan were approved, Elmwood argues, no payment was due Gilliland whatsoever, as all parties understood that payments would be made from loan funds.

Two members of the Court of Appeals panel, and thus a majority, held that the clause was not ambiguous and clearly should be interpreted in the way Gilliland urges. One member of the panel penned a dissent, stating he would hold that the provision was ambiguous.

"Summary judgment should not be granted even when there is no dispute as to the evidentiary facts if there is dispute as to the conclusions to be drawn from those facts." *Piedmont Engineers, Architects and Planners, Inc. v. First Hartford Realty Corp.*, 278 S.C. 195, 196, 293 S.E. (2d) 706, 707 (1982). This Court need not decide that it favors Gilliland's or Elmwood's view of the contractual provision at this juncture; we need only opine on whether the provision is ambiguous. *See Bishop v. Benson*, 297 S.C. 14, 374 S.E. (2d) 517 (Ct. App. 1988) (summary judgment improper on a construction of contract issue where the intention of the parties as to the meaning of the contract may not be gathered from the four corners of the instrument).

"An ambiguous contract is one capable of being understood in more senses than one, an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning." Bruce v. Blalock, 241 S.C. 155, 160, 127 S.E. (2d) 439, 441 (1962). In ruling on a motion for summary judgment, the court must construe all inferences and conclusions arising in and from the evidence most strongly against the moving party. Lyles v. BMI, Inc., 292 S.C. 153, 355 S.E. (2d) 282 (1987). We hold that the granting of summary judgment in favor of Gilliland was improper. We agree with the dissenter on the Court of Appeals panel that this provision is ambiguous.

## II. *Defendants' Counterclaim in Tort*

Gilliland moved for summary judgment on Elmwood's counterclaim for negligence "on the grounds that the breach of contract is not actionable as a tort and on the further grounds that there was no duty on the part of the plaintiff, aside from the contract, to perform . . . [the acts complained of by Elmwood]." (Tr.49). The trial court ruled, and the Court of Appeals agreed, that "[a] mere breach of contract is not actionable as a tort, no matter what the intent of the breaching party was. No relationship [giving rise to a tort duty] beyond the contract has been demonstrated or discerned and consequently Plaintiff's Motion for Summary Judgment on this issue is granted." (Tr. 131).

Elmwood's counterclaim contained allegations that, as mentioned above, Gilliland was negligent in making certain representations which induced Elmwood to contract, and that Gilliland negligently designed the project, negligently estimated construction costs, and negligently failed to obtain certain necessary governmental approvals. We disagree with the Court of Appeals' holding that Elmwood has failed to plead and/or demonstrate facts showing a tort duty existing independent of the contract.

We do adhere to the Court of Appeals' ruling insofar as Elmwood's claims of architect malpractice are concerned. The well known rule still exists that generally, in a malpractice case, "there can be no finding of negligence in the absence of expert testimony to support it." D. DOBBS, R. KEETON, & D. OWEN, PROSSER AND

KEETON ON TORTS, 188 (5th ed. 1984) (*citing, inter alia, 530 East 89 Corp. v. Unger,* 43 N.Y. (2d) 776, 402 N.Y.S. (2d) 382, 373 N.E. (2d) 276 (1977) (dealing with architects)). The claimant in a malpractice claim must, through expert testimony, establish both the standard of care and the deviation by the defendant from such standard. *Id.* at n. 49. Here, Elmwood presented no evidence from an expert that Gilliland had committed malpractice. Thus, summary judgment was, in this respect, proper.

However, this does not end the inquiry. In South Carolina, one may bring an action sounding in tort for negligent misrepresentation. "A duty to exercise reasonable care in giving information exists when the defendant has a pecuniary interest in the transaction." *Winburn v. Insurance Co.,* 287 S.C. 435, 441, 339 S.E. (2d) 142, 146 (Ct. App. 1985). "The recovery of damages may be predicted upon a negligently made false statement where a party suffers either injury or loss as a consequence of relying upon the misrepresentation." *Id.* These general rules have been applied, in every case this Court has located, to support the recognition of a negligent misrepresentation claim where the misrepresented fact(s) induced the plaintiff to enter a contract or business transaction. *See, e.g., Winburn, supra* (recognizing that under appropriate facts, negligent representations inducing the signing of an endorsement could be actionable); *Pittman v. Galloway,* 281 S.C. 70, 313 S.E. (2d) 632 (Ct. App. 1984) (negligent representation inducing the plaintiff's purchase of land is actionable); and *First Federal Sav. Bank v. Knauss,* 296 S.C. 136, 370 S.E. (2d) 906 (Ct. App. 1988) (recognizing that under appropriate facts, negligent representations inducing property purchase could be actionable).

Gilliland argues that either the parol evidence rule or the merger clause in the parties' contract precludes Elmwood's negligent misrepresentation claim. We do not agree. We have previously held that parol evidence is generally admissible to show fraud in the inducement of a writing. *See Bradley v. Hullander,* 272 S.C. 6, 249 S.E. (2d) 486 (1978) *appeal after remand,* 277 S.C. 327, 287 S.E. (2d) 140 (1982). In *Bradley* we did not decide whether this is true for negligent misrepresentation as such was not alleged or

proved in that case. The applicability of the parol evidence rule to a cause of action for negligent misrepresentation is apparently a novel issue in this state.

"In a majority of jurisdictions the parol evidence rule bars oral testimony in certain contract cases, but is not applicable in misrepresentation cases." *Rempel v. Nationwide Life Ins. Co.*, 471 Pa. 404, 370 A. (2d) 366, 370 (1977). The parol evidence rule has been held inapplicable to tort causes of action (including negligent misrepresentation) since the rule is one of substantive contract law. *Formento v. Encanto Business Park*, 154 Ariz. App. 495, 744 P. (2d) 22 (App. 1987). Furthermore, it has been held that "a seller should not be allowed to hide behind an integration clause to avoid the consequences of a misrepresentation, whether fraudulent or negligent." *Id.*, 744 P. (2d) at 26. We follow the reasoning of the *Formento* court and hold that neither the parol evidence rule nor the merger or integration clause in the parties' contract prevents Elmwood from proceeding on its negligent misrepresentation theory.

III. *Defendants' Counterclaim in Contract*

We agree with the Court of Appeals' view that Elmwood's breach of contract counterclaims are precluded by the parol evidence rule. None of the alleged breaches of contract can be evidenced by express contractual provisions. The parol evidence rule prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary, or explain the written instrument. *Iseman v. Hobbs*, 290 S.C. 482, 351 S.E. (2d) 351 (Ct. App. 1986). This is especially true when the written instrument contains a merger or integration clause. *United States leasing Corp. v. Janicare, Inc.*, 294 S.C. 312, 364 S.E. (2d) 202 (Ct. App. 1988).

Accordingly, the judgment of the Court of Appeals is affirmed in part, reversed in part, and remanded for a trial on the merits regarding issues (I) and (II) as set forth in this opinion.

GREGORY, C.J. HARWELL, J., and HUGHSTON and HOWELL, Acting Associate Justices, concur.